New-York General Term, December, 1850. *Edmonds,*
*Edwards,* and *Mitchell,* Justices.

Nixon and others *vs.* Palmer.

Residence of a party in another state, at a given time, having been proved,
· the presumption, unless rebutted, is that it continues, and the burthen of
proof is upon the party alledging a different place of residence.

Whether a party, against whom a deposition taken *de bene esse* is offered, is a
competent witness for the purpose of excluding the deposition? *Quære.*

The uncorroborated testimony of an interested witness, that shortly before
the trial he saw, in this state, a person proved by other testimony to be a
resident of another state, is not sufficient to authorize the exclusion of a
deposition of such person taken *de bene esse.*

This was an action of assumpsit, brought against the defend-
ant, as the acceptor of a bill of exchange, drawn by one Wil-
liam G. Sandford. The cause was tried at the New-York circuit
in October, 1847.

The declaration contained the common money counts, to which
was subjoined a copy of the bill of exchange upon which the
action was brought. The plea was the general issue. The
counsel for the plaintiffs called as a witness, *Richard Good-
man,* who testified that he was one of the attorneys for the
plaintiffs; that he knew William G. Sandford; that he resided
in Southport, Wisconsin territory; that he was not in this
state, that witness knew of; that he had made inquiries for
him; that the last time he saw him, was when his deposition
was taken de bene esse in this cause in July, 1847; that Sand-
ford then said he would leave the next day for Wisconsin terri-
tory. On cross-examination he testified that the examination
of Sandford was taken at the chambers of Judge Edmonds in
the city of New-York; that witness knew nothing of the resi-
dence of Sandford, except what Sandford and the plaintiffs in
this suit had told him; that witness never saw Sandford out of
the state of New-York; that he did not know that Sandford
had been a resident in the state of New-York; that the first he
knew of Sandford was about a week before his examination as

a witness in this cause; that witness had never heard of Sandford before the claim in question arose. The counsel for the plaintiffs then produced a paper, purporting to be a deposition of William G. Sandford, as a witness in this cause, taken de bene esse before his honor Judge Edmonds, in July, 1847. The counsel for the defendant objected to the reading of said deposition in evidence, on the ground that the proper proof that the witness had continued absent out of this state, so that his attendance could not be compelled by the ordinary process of law at such trial, had not been given; and in support of such objection offered to prove, by the oath of the defendant, that said witness was within this state, and that his attendance at this trial might have been compelled by the ordinary process of law. This evidence was objected to by the counsel of the plaintiffs, but admitted by the judge; whereupon the defendant was duly sworn to prove this fact, and answered that he knew William G. Sandford; that he resided in the town of Mendon, in the county of Monroe, in this state; that he saw Sandford, at Mendon, on Monday, previous to the trial; that Sandford had a family living there. Being examined on the part of the plaintiffs, he answered, that he left Mendon to come to New-York city on the previous Tuesday; that witness saw William G. Sandford on Monday, at Honeoye Falls, in the town of Mendon, conversing with Samuel Sibley. He did not know how long Sandford had been at Mendon; that he saw him there some weeks before that. That Sandford was absent from Mendon for about two years; that he did not know anything of his residence, nor of his family residing at Mendon, except from report. Sandford had been there once before, to his knowledge, since he went away some two years ago. He was formerly a resident of Mendon, and married his wife there. That some time the previous spring Sandford told him he resided in Wisconsin; that defendant had been at Southport, but did not see Sandford there. Sandford had no house there that he knew of; that defendant made no inquiries for Sandford while at Southport. The counsel for the plaintiffs, for the purpose of further supporting his offer to read said deposition, called as a witness *Archibald Hil-*

*ton,* who testified that he knew William G. Sandford, and had always understood that he resided in Wisconsin; that Sandford had stated to witness that he lived there. The counsel for the plaintiffs next called *Ellis Bartlett,* one of the plaintiffs, for the purpose of further supporting his offer to read said deposition, who testified that he knew William G. Sandford; that plaintiff's firm had had correspondence with Sandford, and that he resided at Southport; that he saw Sandford the first of August, or last of July, and Sandford stated to him that he resided at Southport. Being questioned on the part of defendant, he answered that he had never seen Sandford except in the city of New-York; that he had received letters from him in Wisconsin; that he had known him as a resident of Southport since July or August, 1846. *Palemon Webb* testified that he saw Sandford at Southport, and he had a family there; that he was in business at that place; that he saw him there in January and February, 1847, and saw him in Chicago in March, following.

The counsel for the plaintiffs again offered to read in evidence the paper purporting to be the deposition of said Sandford, taken de bene esse in this cause. The counsel for the defendant objected to the reading of said deposition, on the ground that upon the evidence so given it satisfactorily appeared that the witness, whose testimony had been taken conditionally, had not continued absent out of this state, so that his attendance at this trial could not be compelled by the ordinary process of law; that he was last seen within this state at the place of his former residence, and where his relatives resided; that no inquiries had been made in any quarter, where any information as to his position or location was likely to be gained, since he was proved to be within this state, or at any other time; that against the evidence so given of his personal presence within this state, the judge could not presume him to be out of the state at the time of the trial; that sufficient proof had not been given to entitle the plaintiffs to read said deposition in evidence. The counsel for the defendant further stated, in support of said objection, that the defendant had no opportunity to cross-exam-

ine the witness on taking said deposition, and that he had not been cross-examined. The counsel for the plaintiffs admitted that, upon the taking of said deposition the defendant did not attend or cross-examine said witness; but that it appeared by the proof of service, made part of said deposition, that the defendant's counsel had notice of the taking of said examination, but insisted that, upon the evidence so given, the plaintiffs had satisfactorily proved that the witness had continued absent out of this state, so that his attendance at this trial could not be compelled by the ordinary process of law; and his honor the judge so decided, and admitted the deposition to be read in evidence, and overruled the objection thereto: and to his decision and ruling thereon the counsel for the defendant excepted. The plaintiffs recovered a verdict, and the defendants moved for a new trial.

*E. S. Van Winkle,* for the plaintiffs.

*E. Sandford,* for the defendant.

*By the Court,* EDWARDS, J. We do not think that the testimony in this case warrants the conclusion that the witness, whose deposition was taken *de bene esse,* was, at the time of the trial, either a resident of this state, or that he was within this state, according to the spirit and meaning of the statute.

It was clearly proved at the trial, that the witness was a resident of Wisconsin at the time his deposition was taken, and continued to be so for some time afterwards. This testimony cast the burthen of proof upon the defendant; for residence in another state having been once established, the presumption, unless rebutted, would be that it continued. Does the proof then show a change of residence? The only testimony relied upon for that purpose, is that of the defendant in the suit. In the first place, it is questionable whether he was a competent witness. The general rule is, that a party who offers a deposition taken *de bene esse,* can himself prove the absence of the witness; and there is every reason why that should be the case,

Nixon *v.* Palmer.

for he merely enables himself to read testimony which, for the sake of convenience, has been taken before, instead of at the trial.    And, in legal supposition, no injury can be done to the party against whom it is introduced.    But is not the case different where the party against whom the deposition is taken, is offered for the purpose of excluding it altogether?    There can be no doubt that such a party has the strongest interest in excluding the testimony of the witness; for by so doing he might, and in most instances would be able, upon his own testimony, to succeed in the suit.    In this case, however, the justice at the circuit allowed the defendant to be examined; but, although the question of his admissibility is not before us, still, the fact of his interest ought to be taken into consideration in weighing his testimony.    It will be seen by reference to the case that the defendant in his direct examination said, that at the time of the trial, the witness Sandford was a resident of Mendon, in Monroe county, in this state; that he had seen him there on the Monday before the trial, and that he had a family living there.    But it will also be seen, upon reference to his cross-examination, that he does not state, of his own knowledge, a single fact which supports his direct examination, except that he casually saw the witness at Mendon on the Monday previous to the trial.    And the vagueness of his testimony clearly shows that he was not warranted in the conclusions which he gives in his direct examination.    The question, then, which was presented to the court was, whether the positive proof of the residence of the witness in Wisconsin, was overcome by the testimony of the defendant himself; or, in other words, whether the uncorroborated testimony of an interested witness, which, at best, is of an indefinite and unsatisfactory character, that he had seen a resident of Wisconsin in a remote part of this state shortly before the trial, was of itself sufficient to authorize the exclusion of his deposition taken *de bene esse.*    (*See Ward* v. *Wells,* 1  *Taunt.* 461.)

This was, chiefly, a question as to the weight to be given to testimony; and the justice at the circuit, who had the witnesses before him, and who knew the bias of interest under which the

defendant testified, came to the conclusion that the witness Sandford could not be considered a resident of this state, and according to the spirit and meaning of the statute, was not, at the time of the trial, within this state, in such a manner as to exclude the reading of his deposition. It seems to us that we should not be warranted in coming to a different conclusion.

But it was also contended that the defendant had not sufficient notice of the examination. The statute provides that the party against whom a deposition is to be read, may prevent the reading thereof, by satisfactory proof that sufficient notice was not given him to enable him to attend the examination of the witness. (2 *R. S.* 393, § 8.) The defendant offered no evidence to show that he had not received sufficient notice of the examination, but relied upon other facts and circumstances which had been proved, or appeared, upon the trial. The justice at the circuit did not think that those facts and circumstances amounted to satisfactory proof that sufficient notice had not been given, and we think that he was justified in coming to this conclusion.

The motion for a new trial must be denied, with costs.

